IN RE CHASE.

PATENTS; PATENTABILITY.

In view of the state of the art of dyeing as disclosed by three patents referred to, it was *held* that applicants for a patent for a process of producing printed anilin-black designs upon vegetable textile fabrics had done nothing more than to apply to two of the patented processes of printing the selection of a combination of the ingredients disclosed in the other patent, and that this did not amount to invention.

No. 444. Patent Appeals. Submitted March 10, 1908. Decided March 31, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents denying an application for a patent. *Affirmed.*

The facts are stated in the opinion.

*Messrs. Meyers, Cushman, & Rea* and *Mr. George L. Roberts* for the appellants.

*Mr. Frederick A. Tennant* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal [by Roscoe L. Chase and Alexander H. McKenzie] from a decision of the Commissioner of Patents denying an application for a patent for an improvement in the art of producing printed anilin-black designs upon vegetable textile fabrics, having the following claims:

"1. The method of producing anilin-black designs upon vegetable textile fabrics, by successivly printing thereon, in either order of sequence, the constituents essential to the development of anilin-black separated into two groups, one constituted by the anilin salt itself, and the other constituted by the remaining ingredients, in such a manner as to superimpose the separate imprints upon each other wherever the design is ultimately to appear; that is to say, printing with the oxydizing salt and catalytic agent mixed together and suitably thickened one of the two mutually complementary figures which in conjunction are to form the ultimate design, and printing with the anilin salt, suitably thickened, the other remaining complementary figure so as wholly or partly to superimpose it upon the figure first printed next subjecting the fabric to treatment adapted for effecting the development of anilin-black wherever all of the said constituents have been coincidentally deposited; and finally clearing from the fabric the anilin salt which has remained isolated from the ingredients of the other imprint.

"2. Method of producing anilin-black designs upon vegetable textile fabrics, by successively printing thereon in either order of sequence, but so as to superimpose one imprint upon the other, wherever the design is ultimately to appear, on the one hand, with a suitably thickened mixture of sodium chlorate and a vanadium salt, one of two mutually complementary figures which in conjunction are to form the ultimate design, and, on the other hand, with a suitably thickened anilin salt, the other remaining complementary figure, next subjecting the fabric so printed to treatment adapted for effecting the development of anilin-black wherever the ingredients of the two imprints have been coincidentally deposited, and finally clearing the fabric from the anilin salt, which has remained isolated from the ingredients of the other printing mixture."

As stated by the Commissioner: "The alleged invention is a process for producing printed anilin-black designs upon vegetable textile fabrics in such manner as to prevent the development of any resistant or indelible coloring product of the anilin salt except only when all the constitutents essential to the production of anilin-black are coincidentally deposited upon the product."

The color known as anilin-black has been used in the art of dyeing for many years, and its formation is described in the application as follows:

"Anilin-black, as is well known, results from the chemical reactions of three essential constituents of a color mixture deposited upon a vegetable textile fabric, namely, (1) a salt of anilin, usually the hydrochloride, and occasionally that of another acid; (2) an oxydizing salt such as potassium chlorate or sodium chlorate, and (3) a compound containing some one of certain few metals; among which may be especially mentioned, iron, copper, and vanadium, or incidentally chronium, cerium, and uranium, and each of which, by virtue of its presence, excites and promotes the chemical transformation of the anilin by a process of oxidization into anilin-black."

The applicants state that, when the three compositions are separately printed the overlapping of the supplementary fig-

ures sometimes causes the formation of an indelible anilin color outside of the predetermined design in anilin-black. They obviated this defect by printing but two supplemental figures, one with a suitably thickened mixture of the oxidizing salt and the catalytic agent, and the other with a suitably thickened anilin salt alone. As it is admitted that the production of anilin-black requires the co-operative action of but three essential ingredients, the question is, whether the applicants' selection of the manner of applying the ingredients involves invention in view of the state of the prior art. Among the references showing this are the following patents: Pinkney, August 23, 1870, No. 106,616; Pinkney, May 21, 1872, No. 127,102; Jeanmaire and Schmid, January 2, 1906, No. 808,-987.

The first Pinkney patent shows processes of treating the fabric with a mixture of the anilin salt, the oxidizing agent and the catalytic agent, or by treating the fabric with two baths, one consisting of a solution of anilin salts alone, and the other of a mixture of the oxidizing, and the catalytic agent. These baths may be used in either order of sequence. Pinkney Patent No. 127,102 discloses the process of two baths for dyeing fabrics, one consisting of anilin salt alone, and the other of an oxidizing and a catalytic agent, naming sodium chlorate as the former and a vanadium salt as the latter. Both of these are mentioned as such agents in applicants' specifications. Neither of these patents specifically states that the printing of the figures may be accomplished by the successive application of two complementary impressions, one printed with the anilin salt, and the other with a mixture of the oxidizing and catalytic agents. The first claim of the Jeanmaire and Schmid patent reads as follows: "The method of producing designs upon vegetable textile fabrics, which consists, primarily, in successively printing thereon, in either order of sequence, two separate constituents whose combination is essential to the formation of a fixed color, in such manner as to superimpose the one upon the other wherever the design is to be produced,—that is to say, printing with one of these

constituents suitably thickened, a delimiting figure having its area and contour, respectively, corresponding to the field and outline of the ultimate design; and printing with the other remaining constituent suitably thickened, a pattern of decorative detail consisting of predetermined variegations, and having, in the aggregate, such extent and shape as, when printed, to cover the spaces occupied by the field of the delimiting figure; next subjecting the fabric so printed to treatment adapted for effecting the combination of the said constituents in the formation of such fixed color, wherever they may have been coincidentally deposited; and finally clearing from the fabric those removable portions of the said constituents which have remained isolated from each other."

As anilin-black is produced by the use of the three ingredients before stated, it is necessary, in the two-step printing process, to divide them so as to group two of them together, leaving the other to be used by itself. As said by the Examiners-in-Chief, but three combinations were possible, as follows:

(1) (a) Anilin salt, oxidizing salt,
    (b) catalytic salt;
(2) (a) Anilin salt, catalytic agent,
    (b) oxidizing salt;
(3) (a) Anilin salt,
    (b) oxidizing salt and catalytic agent.

The third of these is the successful one described in the claims. But this was not left to those skilled in the art of printing colors to learn by experiment alone, because Pinkney's patent No. 106,616, as pointed out above, describes a process of dyeing with anilin-black, by the two baths, one consisting of the anilin salt alone, and the other of the oxidizing and catalytic agents combined; either to be used as the preliminary one.

In view of the state of the art as shown in the patents aforesaid, we must agree with the Commissioner that applicants appear to have done nothing more than to apply to the Jeanmaire and Schmid processes of printing the selection of a combination of the ingredients disclosed by Pinkney. This did not rise to the height of invention. The decision must be af-

firmed. It is so ordered, and that the clerk certify this decision to the Commissioner of Patents. *Affirmed.*